United States District Court
Southern District of Texas

**ENTERED**

August 10, 2026

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ROSARIO BENAVIDES BALCAZAR, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 1:26-CV-713 |
| | § | |
| JUAN AGUDELO, *et al.*, | § | |
| | § | |
| Respondents. | § | |

## ORDER

About six weeks ago, Petitioner Rosario Benavides Balcazar was taken into immigration custody. Respondents detain her as an applicant for admission under 8 U.S.C. § 1225(b)(2).

Petitioner filed a Petition for Writ of Habeas Corpus, seeking an order requiring her immediate release, and alleging that she is not an alien subject to detention under Section 1225(b)(2) because she was born in Mission, Texas, and is thus a United States citizen. Respondents contend that the Court lacks subject matter jurisdiction to consider Petitioner's claim to United States citizenship, and that in any event, she has not demonstrated that she was born in Texas.

Based on the record and the applicable law, the Court concludes that it possesses subject matter jurisdiction over this habeas action, but that Petitioner has not demonstrated by a preponderance of the evidence that she was born in the United States. As a result, Petitioner fails to demonstrate that Respondents cannot rely on Section 1225(b)(2) to hold her in immigration custody.

## I.    Procedural Background

On June 30, 2026, immigration authorities arrested Petitioner and initiated removal proceedings against her. (*See* I-213 Form, Doc. 19–2, 2) That same day, Petitioner filed a Petition for Writ of Habeas Corpus (Doc. 1), alleging that she is a United States citizen and that

Respondents possess "no statutory authority to detain a United States citizen." (Pet., Doc. 1, ¶ 5) She also sought a temporary restraining order requiring Respondents to fully investigate her nationality claim and to release her. (TRO Motion, Doc. 2)

Two days later, the Court held a telephonic hearing on the motion for a temporary restraining order. The Court declined to issue immediate injunctive relief, but scheduled a hearing for August 5 as to the habeas claim. Before that hearing, Petitioner submitted an Amended Petition (Doc. 10) and Respondents filed a motion to dismiss for lack of subject matter jurisdiction. (Motion, Doc. 20)

At the evidentiary hearing, Petitioner presented testimony from Ana Maria Benavides Balcazar, Margarita Benavides Balcazar, and Ana Benavides, who are Petitioner's maternal aunts and her younger sister, respectively.[1]

## II.    Jurisdictional Analysis

The Court begins, as it must, by considering its own subject matter jurisdiction, especially as Respondents raise a jurisdictional challenge to Petitioner's habeas action. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

Under 28 U.S.C. § 2241, a federal district court possesses the authority to grant a writ of habeas corpus to a person in custody within its geographical jurisdiction. *Lee v. Wetzel*, 244 F.3d 370, 373 (5th Cir. 2001). "The writ of habeas corpus has always been available to review the legality of Executive detention." *I.N.S. v. St. Cyr*, 533 U.S. 289, 305 (2001); *see also Boumediene v. Bush*, 553 U.S. 723, 783 (2008) ("Where a person is detained by executive order, rather than, say, after being tried and convicted in a court, the need for collateral review is most pressing."). Within the immigration context, the writ of habeas corpus "has traditionally been a means to secure release from unlawful detention." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020).

---

[1] Petitioner's mother is deceased.

In the instant matter, Petitioner presents a claim that falls within the heartland of a habeas action. She alleges, and no party disputes, that Respondents currently detain her as an alien, based on Section 1225(b)(2). But Petitioner alleges that she is a United States citizen, which, if true, would defeat the only authority on which Respondents rely to detain her. If Petitioner's allegation as to her citizenship proves true, Respondents lack any statutory authority to hold her in custody, requiring her immediate release. Thus, the Court concludes that Petitioner alleges a viable claim that sounds in habeas.

Respondents, however, argue that the removal proceedings currently in progress against Petitioner alter the analysis. More specifically, they contend that in light of those immigration proceedings, statutory provisions strip this Court of subject matter jurisdiction in this lawsuit. They invoke three subsections within 8 U.S.C. § 1252 in making this argument, (*see* Motion, Doc. 20, 3 (citing 8 U.S.C. §§ 1252(b)(5), 1252(b)(9), and 1252(g)), as well as decisions considering claims of citizenship within the immigration court context (*see id.* (citing *Garza-Flores v. Mayorkas*, 38 F.4th 440, 443-44 (5th Cir. 2022) and *Lopez v. Holder*, 563 F.3d 107, 110 (5th Cir. 2009)).

Based on the record and controlling authorities, the Court disagrees with Respondents' position.

"[W]here Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." *Webster v. Doe*, 486 U.S. 592, 603 (1988). "[W]here a provision precluding review is claimed to bar habeas review," the Supreme Court "has required a particularly clear statement that such is Congress' intent." *Demore v. Kim*, 538 U.S. 510, 517 (2003); *see also Boumediene*, 553 U.S. at 739 (describing the clear statement rule as requiring "an unmistakably clear statement") (quoting *Hamdan v. Rumsfeld*, 548 U.S. 557, 575 (2006)); *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (explaining that the United States's proposed broad construction of Section 1252(b)(9) would lead to "absurd" results).

3 / 11

Respondents' reliance on subsections within Section 1252 falls short because those provisions concern the judicial review of orders of removal. Section 1252(b) expressly addresses requirements "[w]ith respect to review of an order of removal under [Section 1252(a)(1)][,]" and subsections 1252(b)(5) and 1252(b)(9) should be construed accordingly. The Supreme Court has described Sections 1252(b)(9) and 1252(g) so as to encompass matters beyond the review of orders of removal, but those decisions significantly limit the scope of the jurisdictional language within those provisions. For example, the Supreme Court has explained that Section 1252(b)(9) "does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020) (cleaned up). As for Section 1252(g), the Supreme Court has cabined the reach of the provision to "'three discrete actions' that the Attorney General may take: her 'decision or action' to commence proceedings, adjudicate cases, or execute removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Duarte v. Mayorkas*, 27 F.4th 1044, 1051 (5th Cir. 2022) (explaining that Section 1252(g) "specifically removes all other jurisdiction from courts to hear any challenge to the exercise of immigration officials' prosecutorial discretion in deciding which aliens to place in removal proceedings and which removal orders to execute"). In the current matter, Petitioner's challenge concerns neither any of these limited circumstances nor a review of an order of removal. Rather, Petitioner alleges only that she is a United States citizen, and that her citizenship prohibits Respondents from detaining her based on a statute–i.e., 8 U.S.C. § 1225–that applies only to aliens. As to this claim, the text of the Section 1252 subsections that Respondents cite does not present a "particularly clear statement" of Congress's intent to preclude judicial review.

Respondents also argue that Petitioner's habeas action "is an inappropriate vehicle to assert" her claim to United States citizenship.[2] (Motion, Doc. 20, 2–3)  In making this argument, Respondents cite to authorities noting that "[a] person generally may pursue a citizenship claim in two ways." (Motion, Doc. 20, 3 (citing *Garza-Flores*, 38 F.4th at 443–44 and *Lopez*, 563 F.3d at 110).  Those two avenues include the process that ultimately leads to a declaratory judgment action under 8 U.S.C. § 1503, and the procedures under Section 1252 for seeking review in a United States Court of Appeals of an unsuccessful citizenship defense in immigration removal proceedings.  But the Court does not construe these authorities as prohibiting federal courts from making a finding regarding United States citizenship in all other contexts.  The use of "generally" in *Garza* supports this construction, as it implicitly recognizes that other circumstances may exist when a federal court may consider evidence and reach a finding as to an individual's nationality claim.  Such circumstances may be uncommon, but neither *Garza* nor *Lopez* expressly prohibit such fact finding.  *See, e.g.*, *Quezada v. United States*, No. 3:24-CV-564-L (BK), 2025 WL 747263, at *3 (N.D. Tex. Jan. 29, 2025), *report and recommendation adopted sub nom. Guerra Quezada v. United States*, 2025 WL 496572 (N.D. Tex. Feb. 14, 2025) (reaching the factual issue of whether the plaintiff was United States citizen in order to resolve a claim for wrongful deportation under the Federal Tort Claims Act, and despite a jurisdictional challenge based on 8 U.S.C. § 1252(g)).  Here, resolution of Petitioner's habeas action requires this Court to make such a factual finding as to her nationality claim.[3]

---

[2] Respondents relatedly characterize Petitioner's habeas action as a "preemptive collateral attack of the removal proceedings[.]" (Motion, Doc. 20, 2–2)  But Petitioner presents no challenge to the removal proceedings or to any finding by an Immigration Court.

[3] The Supreme Court in *Jennings* also noted that the United States' proposed statutory construction would "make claims of prolonged detention effectively unreviewable." *Jennings*, 583 U.S. at 293.  "By the time a final order of removal was eventually entered, the allegedly excessive detention would have already taken place." *Id.*  In the present matter, Respondents' position raises the same concern.  Respondents contend that Petitioner should await a determination of her nationality claim by the Immigration Court, even though removal proceedings are at an early stage.  In the meantime, Respondents will detain her, perhaps for a lengthy period, and with no opportunity to seek release on bond.  If Petitioner's claim to United States citizenship proves true, Petitioner would have spent a considerable period in unauthorized detention, having been prohibited a timely review of her nationality claim.

Finally, during the August 5 hearing, Respondents relied on *Vasquez v. Aleman*, No. 5:19-MC-611, 2020 WL 13556584, at *1 (S.D. Tex. Apr. 21, 2020).  In *Vasquez*, the petitioner sought release from immigration custody via a habeas action, based on a claim to United States citizenship, while removal proceedings were ongoing against him.  But during the pendency of the habeas action, the petitioner was released from custody.  As a result, the court denied the habeas petition as moot, *see Vasquez*, 2020 WL 13556584, at *7, rendering the case distinguishable from the instant matter.  Still, in dicta, *Vasquez* analyzed whether, to resolve the petitioner's request for release, the court could decide the issue of petitioner's claim to United States derivative citizenship.  The court answered in the negative, explaining that the petitioner could not "attempt to establish a claim of derivative citizenship here [i.e., in the habeas action] while it is being litigated in removal proceedings." *Id.* at *8.  But the decisions on which *Vasquez* relied involved distinguishable facts and legal issues. *See, e.g., United States v. Juarez*, No. CIV.A. H-07-3075, 2009 WL 2971105, at *1 (S.D. Tex. Sept. 15, 2009), *report and recommendation adopted*, 2009 WL 3568631 (S.D. Tex. Oct. 30, 2009), *rev'd and remanded*, 672 F.3d 381 (5th Cir. 2012) (concluding that the court lacked jurisdiction to decide a nationality claim as a collateral attack to a prior deportation order within a criminal habeas proceeding); *Martinez v. Holder*, No. CIV.A. H-13-0707, 2014 WL 1315676, at *4 (S.D. Tex. Mar. 31, 2014) (finding that ongoing removal proceedings deprived the district court of jurisdiction to consider a citizenship claim under 8 U.S.C. § 1503(a)).  The Court has considered these authorities and concludes that they do not prohibit consideration of Petitioner's habeas claim.

In summary, Respondents hold Petitioner in immigration custody based on 8 U.S.C. § 1225(b)(2)(A), which authorizes the detention of "an alien who is an applicant for admission." *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026).  Petitioner alleges that she is not an alien because she was born in the United States.  If true, Respondents cannot rely on Section 1225 to detain her.  No statute or constitutional principle prohibits the Court from making

factual findings necessary to determine whether Respondents can utilize Section 1225 against Petitioner.4

Having determined that the Court possesses subject matter jurisdiction to consider Petitioner's challenge to her detention on the grounds that she is a United States citizen, the Court considers whether she is entitled to relief.

### III.   Nationality Claim

All persons born "on American soil and subject to American law" are citizens of the United States from birth. *Trump v. Barbara*, — U.S. —, 146 S. Ct. 2438, 2449 (2026).  Here, Petitioner alleges that she was born in Mission, Texas, rendering her a United States citizen at birth.

As Petitioner seeks her release via a petition of writ of habeas corpus, she must demonstrate her entitlement to such relief by a preponderance of the evidence. *See Villanueva v. Tate*, 801 F. Supp. 3d 689, 697 (S.D. Tex. 2025) (citing *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) and *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)); *see also Metropolitan Stevedore Co. v. Rambo*, 521 U.S. 121, 137 n. 9 (1997) (noting that under the preponderance standard, "when the evidence is equally balanced," the party bearing the burden of persuasion "must lose").

Under 8 U.S.C. § 1503, an individual can seek a declaratory judgment that she is a United States citizen.  In such cases, a court also requires the individual to prove her citizenship claim by a preponderance of the evidence. *See, e.g., Escalante v. Clinton*, 386 F. App'x 493, 496 (5th Cir. 2010) (per curiam) (unpubl.) (citing *De Vargas v. Brownell*, 251 F.2d 869, 870 (5th Cir. 1958)). Given the analogous nature of the critical fact issue and the burden of proof, the Court finds instructive the Section 1503 caselaw involving the consideration of evidence regarding citizenship.

---

4 The Court's fact finding in this case does not terminate or delay the removal proceedings. *See United States v. Low*, 261 F. 73, 74 (5th Cir. 1919) ("A mere claim of citizenship, made in a petition for the writ of habeas corpus by one held under such process, cannot be given the effect of arresting the progress of the administrative proceeding provided for."). And the Court does not reach whether any fact finding required to resolve Petitioner's habeas action has preclusive effect or otherwise impacts the removal proceedings.

When considering testimony, courts weigh the credibility of witnesses, but receive a plaintiff's self-serving statements and those of interested witnesses "with a grain of salt." *De Vargas*, 251 F.2d at 871; *see also Garcia*, 915 F. Supp. 2d at 835; *Patel v. Rice*, 403 F. Supp. 2d 560, 565 (N.D. Tex. 2005), *aff'd*, 224 F. App'x 414 (5th Cir. 2007).   As for documents, "[a] contemporaneously filed foreign birth record creates a presumption of alienage[,]" although the presumption can be rebutted. *Sanchez v. Kerry*, No. 4:11-CV-02084, 2014 WL 2932275, at *4 (S.D. Tex. June 27, 2014), *aff'd*, 648 F. App'x 386 (5th Cir. 2015).   The Fifth Circuit has not defined the outer boundaries for a contemporaneously-filed birth certificate, but birth certificates accepted as contemporaneous by district courts have been filed within days or a few weeks of the child's birth. *See, e.g., Garcia v. Pompeo*, No. 1:18-CV-59, 2019 WL 13164664, at *4 (S.D. Tex. Dec. 2, 2019) (accepting a Mexican birth certificate registered 11 days after the birth to be contemporaneously filed); *Candela-Rios v. Lynch*, No. SA-16-MC-00220-JWP, 2017 WL 11046200, at *14 (W.D. Tex. Jan. 9, 2017), *aff'd sub nom. Candela-Rios v. Sessions*, 737 F. App'x 187 (5th Cir. 2018) (three days); *Cobos v. Kerry*, No. CIV.A. H-13-2897, 2015 WL 3965660, at *7 (S.D. Tex. June 30, 2015) (eight days); *Trevino v. Pompeo*, No. 5:16-CV-139, 2019 WL 13261429, at *5 (S.D. Tex. Sept. 13, 2019) (54 days).   The Court has located no decision in which a court accepted as contemporaneous a birth certificate registered years after the child's birth.   And in at least one case, a district court found a birth certificate registered about two years (765 days) after the birth of the child to be non-contemporaneous. *See, e.g., Lopez v. Bondi*, No. 7:03-CV-320, 2026 WL 734534, at *13 (S.D. Tex. Mar. 16, 2026).

The Court turns now to the evidence in this case.   Two of Petitioner's maternal aunts testified and shared a consistent story.   Around 1979, Petitioner's mother, Maria Soledad Benavides Balcazar, left Matamoros in search of the father of her two sons, who at the time were her only children.   The aunts understood that Soledad traveled to Texas for this endeavor.   Over the next two years, both aunts lived with their mother–with whom Soledad also lived before

leaving the home–but neither aunt recalls seeing Soledad in Matamoros during that time period. One aunt testified that the family heard nothing at all from or about Soledad while she was away. The other aunt remembered reading letters that Soledad mailed to her mom, apparently postmarked from the United States. In July 1981, Soledad returned to her mother's home in Matamoros, accompanied by a newborn daughter (the Petitioner) and Jesus Quintero, who Soledad claimed was Petitioner's father. Soledad told her family that she had given birth to Petitioner in Mission, Texas.

Petitioner's younger sister also testified. Given that she was born after Petitioner, she had no personal knowledge of the events in 1981, but she testified that she always heard and understood that her mother had given birth to her sister in Texas. Thus, all three witnesses consistently testified that Soledad always claimed that she gave birth to Petitioner in Mission, Texas.

A single document and one event form the basis of Respondents' position. First, in 1985, Soledad registered Petitioner's birth in Mexico, recording Matamoros as the place of birth. Soledad obtained the Mexican birth certificate when Petitioner was about four years old. Given the timing of the registration, the Court does not accept the Mexican birth certificate as contemporaneously filed with Petitioner's birth so as to create a presumption of alienage. But the document nevertheless represents direct evidence that Petitioner was born in Mexico. Petitioner's witnesses offered an explanation for the document. According to them, Soledad always explained that she needed to obtain the birth certificate in 1985 for Petitioner to attend school in Matamoros. Soledad told her family that as she had not paid the Texas midwife in full in 1981 when Petitioner was born, the midwife had not registered Petitioner's birth in Texas, depriving Soledad of a birth certificate from that state for her daughter.

Second, the record also contains a reference to a "Volunrtry [sic] Return" by Petitioner in 1998, but includes no other information about that event.[5] (I-213 Form, Doc. 19-2, 3)   Her agreement to return to Mexico is inconsistent with her primary argument in this matter. Petitioner's case rests on the testimony that Soledad always told her family that she had given birth to Petitioner in Texas.  If such family conversations took place, Petitioner also would have heard throughout childhood that she had been born in the United States.[6]  Yet, in 1998, albeit while a minor, Petitioner accepted a voluntary return to Mexico, an action not applicable to a United States citizen and incomprehensible for an individual who believes herself to be a United States citizen.  The record contains no evidence explaining this decision.

Ultimately, the Court found the witnesses generally credible.  Petitioner's aunts had difficulty remembering all of the details from the events that occurred 45 years ago, and some relatively-minor inconsistencies arose between the witnesses's recollections.  But on the whole, the Court accepts that they remember Soledad telling them that she had given birth to Petitioner in Texas and sharing her reason for obtaining the Mexican birth certificate.  Still, no evidence corroborates whether the story that Soledad told them is true.  At most, one aunt recalls receiving Soledad's letters from Texas, but the other aunt recalls no such letters and testified that the family heard nothing at all from Soledad for two years.  On the other side of the ledger, Soledad's registration of Petitioner's birth as having occurred in Mexico directly contradicts the version of

---

[5] Voluntary return "is a term of art for 'administrative voluntary departure,' a process whereby an alien can leave the country without formal removal proceedings." *Maria S. as Next Friend for E.H.F. v. Garza*, 912 F.3d 778, 782 n. 2 (5th Cir. 2019) (citing 8 U.S.C. § 1229c(a)(1)).  A voluntary return permits "an alien voluntarily to depart the United States at the alien's own expense under this subsection, in lieu of being subject to proceedings[.]" 8 U.S.C. § 1229c(a). Generally, the alien opting for a voluntary departure signs a form containing certain admissions, such as: "I admit that I am in the United States illegally, and I believe I do not face harm if I return to my country. I give up my right to a hearing before the Immigration Court. I wish to return to my country as soon as arrangements can be made to effect my departure. I understand that I may be held in detention until my departure." *Maria S. as Next Friend for E.H.F.*, 912 F.3d at 782; *see also* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 444-01 (Jan. 3, 1997).

[6] Petitioner did not testify, but she alleges that she "has consistently understood that she was born on July 2, 1981, in Mission, Texas, based upon information provided to her by her mother[.]" (Am. Compl., Doc. 10, ¶ 53)

10 / 11

events that she told her family.  And Petitioner's voluntary return casts doubt as to what Petitioner heard while growing up or what she believed as an adult.

Based on the record before it, the Court finds that the evidence on both sides of the key issue of Petitioner's birthplace weighs evenly.  And this finding means that Petitioner has failed to satisfy her burden to demonstrate by a preponderance of the evidence that she was born in the United States.

## IV.     Conclusion

For the reasons stated above, it is:

**ORDERED** that Respondents' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 20) is **DENIED**; and

**ORDERED** that Petitioner Rosario Benavides Balcazar's Amended Petition for Writ of Habeas Corpus (Doc. 10) is **DENIED.**

This is a final and appealable order.

Each party shall bear its own fees and costs.

The Clerk of Court is directed to close this case.

Signed on August 10, 2026.

Fernando Rodriguez, Jr.
United States District Judge